IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:19-cr-04083-SRB-01 |
| | ) |
| OSCAR CURTIS GLOVER, III, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Oscar Curtis Glover, III's Motion to Dismiss the Indictment based upon the delay between his indictment on November 13, 2019, and his arrest five years later on November 21, 2024, in violation of his Sixth Amendment right to a speedy trial. (Doc. 19). The Government has filed its amended suggestions in opposition (Doc. 23), to which Mr. Glover has filed a reply (Doc. 34). The delay apparently was caused because federal prosecutors waited for a pending state prosecution to conclude and partly because Mr. Glover's arrest warrant was not entered into the National Crime Information Center (NCIC) until November 6, 2024. (Docs. 19, 23). The Court held a hearing on this matter on December 20, 2024. (Doc. 46). The motion is now ripe for consideration. I find that there exists a presumption of prejudice from the delay and that the Government has failed to rebut that presumption. Therefore, it is recommended that the Motion to Dismiss be GRANTED.

### I.   Findings of Fact

Based on the evidence presented at the hearing, the Court submits the following proposed findings of fact:

1. On January 7, 2002, Mr. Glover was convicted of his first felony for possession of a controlled substance with intent to distribute in the Circuit Court of Taney County, Missouri. (Gov't Exhibit 5).

2. On July 1, 2019, Mr. Glover was charged with robbery and armed criminal action in the Circuit Court of Cass County, Missouri. (Gov't Exhibit 2; Tr. 12:13-16).

3. Investigators at the scene of the robbery recovered spent shell casings belonging to a firearm. (Tr. 13:6-9).

4. On July 14, 2019, Missouri State Highway Patrol (MSHP) Trooper Gary Gundy observed Mr. Glover speeding and engaged him in a pursuit, after which Mr. Glover crashed and was immediately taken into custody in Boone County, Missouri. (Gov't Exhibit 1; Tr. 14:10-15:2).

5. Trooper Gundy later recovered a Taurus .380 caliber handgun from the floorboard of Mr. Glover's vehicle after it was towed to an impound lot. (Tr. 15:24-16:5; 32:2-7).

6. Brian Fox, a Special Agent with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), is unaware if video from the impound lot where the gun was recovered has been preserved. (*Id*. 32:8-18).

7. Subsequent laboratory analysis showed that the handgun recovered by Trooper Gundy in Boone County was the same firearm that had been discharged in the Cass County robbery on July 1, 2019. (Gov't Exhibit 5; Tr. 15:24-16:5).

8. According to Special Agent Fox, the video footage that captured Mr. Glover's arrest has been preserved, the recovered weapon is in the possession of the MSHP, and Trooper Gundy would be available for trial. (Tr. 16:6-25).

9. On November 7, 2019, Mr. Glover appeared via video and was arraigned in his Cass County robbery and armed criminal action case. (Tr. 13:13-20).

10. At the time of his arraignment in Cass County on November 7, 2019, Mr. Glover was in the custody of the Missouri Department of Corrections (MDOC). (*Id*.).

11. On November 13, 2019, Mr. Glover was indicted in this pending federal case here in the Western District of Missouri for being a felon in possession of a firearm and an arrest warrant was issued by the undersigned the same day. (Gov't Exhibit 1; Defense Exhibit A1.1).

12. On January 29, 2020, Mr. Glover was brought via writ from the MDOC to the Cass County Jail in Harrisonville to face his robbery and armed criminal action charges. (Tr. 17:1-7).

13. On January 30, 2020, Task Force Officer (TFO) Danny Bickell, sent a copy of the federal warrant and detainer to the Cass County Jail. (Gov't Exhibit 3; Tr. 17:8-10).

14. Cass County has no record of that federal detainer, and TFO Bickell has no further recollection of the federal detainer "other than he did send [it]." (Tr. 17:22-18:8).

15. On June 11, 2020, Mr. Glover was charged in Cass County with tampering with a witness. (Gov't Exhibit 4; Tr. 18:23-19:1).

16. Per the Cass County complaint, Mr. Glover was involved in a conspiracy to pay off the victim of the robbery case so that victim would not attend the preliminary hearing. (Gov't Exhibit 4; Tr. 19:5-11).

17. Assistant United States Attorney Jim Lynn proffered that on March 2, 2021, he was assigned to the case. Thereafter, he would periodically check its status on a six-month

case review to ensure Mr. Glover was still in Cass County custody and whether state prosecutors were still pursuing their cases. (Tr. 45:3-46:22).

18. On April 1, 2021, Mr. Glover was released by Cass County into the custody of the Jackson County Sheriff's Office, after which he posted bond and was released. (Defense Exhibit B6.1-B6.2; Tr. 19:12-15).

19. On April 27, 2021, Mr. Glover was indicted on the charge of tampering with a witness in the Circuit Court of Cass County. (Gov't Exhibit 4; 19:19-20:4).

20. On May 3, 2021, Mr. Glover appeared in Cass County on his tampering with a witness charge. He was permitted to continue bond with special conditions. (Gov't Exhibit 4).

21. On June 7, 2021, an arrest warrant was issued for Mr. Glover on his tampering with a witness charge, and he was returned to Cass County custody. (Doc. 4; Tr. 20:23-21:5).

22. On November 5, 2021, Mr. Glover pled guilty to the charge of tampering with a witness. (Gov't Exhibit 1; Tr. 21:9-11).

23. On December 6, 2021, the robbery and armed criminal action charges were dismissed. (Gov't Exhibit 5; Tr. 21:12-14).

24. On February 24, 2022, Mr. Glover was charged in Cass County with robbery, armed criminal action, and unlawful possession of a firearm stemming from the incident on July 1, 2019. (Gov't Exhibit 5).

25. On May 31, 2022, Mr. Glover was sentenced to four years imprisonment in the MDOC for his tampering with a witness charge, and he remained in Cass County custody. (Gov't Exhibit 1; Tr. 21:15-22:5).

26. On February 22, 2023, Mr. Glover was indicted in Cass County for delivering 35 grams or less of marijuana or synthetic cannabinoid and delivery or possession of an item at

a county/private jail or correctional center while still in Cass County custody. (Gov't Exhibit 6; Tr. 22:6-14).

27. On September 11, 2024, Mr. Glover posted bond on his newly indicted charges: robbery, armed criminal action, unlawful possession of a firearm, delivery of 35 grams or less of marijuana or synthetic cannabinoid, and delivery or possession of item at a county/private jail or correctional center. (Gov't Exhibit 1; Tr. 22:6-19).

28. The Government was not notified of Mr. Glover's release by Cass County authorities. (Tr. 22:18-19).

29. On September 12, 2024, Mr. Glover arrived at the MDOC so he could parole out on his tampering with a witness charge through a one-day "director's discharge." (Gov't Exhibit 1; 22:20-23:7).

30. On November 6, 2024, Special Agent Fox became aware that Mr. Glover had been released from Cass County and that the federal arrest warrant and detainer had never been entered into the NCIC. (Tr. 23:8-24).

31. As soon as Special Agent Fox learned of Mr. Glover's release, he entered the federal arrest warrant into NCIC. (*Id*. at 24:5-9).

32. On November 21, 2024, Mr. Glover appeared at the Jackson County courthouse for a pending state case and was arrested by the Jackson County Sheriff's office. (*Id*. at 24:10-15).

33. On November 22, 2024, Mr. Glover was transferred into the custody of the United States Marshals Service. (Defense Exhibit A1.4).

34. Mr. Glover appeared before this Court for his initial appearance on November 22, 2024, and for his arraignment and detention hearings on November 25, 2024. (*Id*.).

35. On November 25, 2024, the Court remanded Mr. Glover to the custody of the United States Marshal, where he remains. (*Id*.).

36. On November 26, 2024, Mr. Glover filed the instant motion requesting dismissal of the pending indictment because of an alleged speedy trial violation. (*Id*.).

## II. Discussion

Mr. Glover seeks to dismiss the pending indictment, arguing that the delay between the return of the indictment and his arrest violates his Sixth Amendment right to a speedy trial. (Doc. 19 at 1). As explained below, Mr. Glover's argument prevails.

### A. Legal Standard

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. "[T]he time under the Sixth Amendment begins to run at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Wolter*, 112 F.4th 567, 571 (8th Cir. 2024) (quotation omitted). The right to a speedy trial is relative and "necessitates a functional analysis of the right in the particular context of the case[.]" *Barker v. Wingo*, 407 U.S. 514, 522 (1972). Courts balance four factors to determine whether an individual's Sixth Amendment right has been infringed: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Id*. at 530. None of these factors is regarded as either a necessary or sufficient condition to the finding of a speedy trial violation. Rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533. When the Government's negligence causes delay many times as long as that generally sufficient to trigger judicial review, and "when the presumption of prejudice… is neither extenuated, as by the defendant's acquiescence, nor

persuasively rebutted, the defendant is entitled to relief." *Doggett v. United States*, 505 U.S. 647, 658 (1992).

**B. The length of delay is presumptively prejudicial and weighs in Mr. Glover's favor.**

The first factor evaluated in determining whether an individual's Sixth Amendment right has been infringed is the length of delay. Mr. Glover argues that the five-year delay between his indictment and arrest was "inordinate and presumptively prejudicial." (Doc. 19 at 4). The Government agrees that the delay "qualifies as presumptively prejudicial and weighs in Glover's favor." (Doc. 23 at 6). Thus, this factor weighs in Mr. Glover's favor.

In reviewing this factor, the Court first looks to whether the delay was presumptively prejudicial. *United States v. Johnson*, 990 F.3d 661, 670 (8th Cir. 2021) (quotation omitted). A delay is presumptively prejudicial if it exceeds one year. *Id*. The Court then considers "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the [Sixth Amendment speedy trial] claim." *Id*. (quoting *United States v. Rodriguez-Valencia*, 753 F.3d 801, 805 (8th Cir. 2014)). "The presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett* at 652. Here, the five-year delay between Mr. Glover's indictment and arrest is presumptively prejudicial and is five times longer than the period necessary to trigger judicial scrutiny. *See Wolter*, 112 F.4th at 572 (finding that an almost four-year delay between a defendant's indictment and trial triggered an evaluation of the other *Barker* factors); *see also United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009) (finding a three-year delay from indictment to arraignment weighed in the defendant's favor). Accordingly, the undersigned recommends that the District Judge find that this factor weighs in Mr. Glover's favor.

**C. Government negligence is the cause of the delay, weighing in Mr. Glover's favor.**

The second factor evaluates reasons for the delay. Mr. Glover contends that the Government had a duty to promptly obtain Mr. Glover's presence for trial under 18 U.S.C. § 3161(j)(1), and the delay between the indictment and his arrest is attributable to the Government's inaction. (Doc. 19 at 5). The Government concedes that it caused the lengthy delay, but only because it chose to defer to Mr. Glover's ongoing state prosecution due to the seriousness of the state crimes and the potential compounding effects of concurrent federal prosecution. (Doc. 23 at 7–11). The Government also alleges that Mr. Glover is partially responsible for the delay. (*Id*. at 11). This factor weighs in Mr. Glover's favor.

If the government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, it must promptly obtain his presence for trial or serve a detainer. 18 U.S.C. § 3161(j)(1). "A deliberate attempt to delay the trial [to] hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence … should weigh less heavily but nevertheless should be considered…" *Barker*, 407 U.S. at 531 (1972). When assessing a delay caused by the government, the Court considers the government's justification. *United States v. Flores-Lagonas*, 993 F.3d 550, 563 (8th Cir. 2021).

In this case, the Government was negligent when it failed to (1) serve Mr. Gover with his detainer and (2) timely seek an arrest of Mr. Glover following his indictment. The Government states that it deferred to the Cass County robbery, armed criminal action, and unlawful use of a weapon charges for several reasons, including the seriousness of the state crimes compared the federal crime, the presence of a live victim in the state case, and the prolonging effect on his ongoing state cases of moving Mr. Glover between federal and state custody. (Doc. 23 at 7–11).

The Eighth Circuit has recognized that in certain situations, pending state action may be a legitimate reason for delaying federal prosecution. In *United States v. Brown*, 325 F.3d 1032, 1035

(8th Cir. 2003), the Court held that the government did not violate the defendant's right to a speedy trial when it "reasonably chose not to obtain immediate custody of [defendant] to avoid disrupting his [state] prosecution…". However, the facts of this case are distinguishable from *Brown*. In *Brown*, federal prosecutors ensured a detainer on the federal charges, advising Mr. Brown of his right to a speedy trial, was personally served on Mr. Brown while he was in state custody. 325 F.3d at 1033-34.

Here, Mr. Glover never received a copy of the federal detainer against him. Special Agent Fox testified that when he became the case agent in December 2021, there was no confirmation that the detainer had been received by Cass County, and he could only "purely" speculate that the detainer had been sent to the fax number listed on the detainer. (Gov't Exhibit 3; Tr. 32:19-23, 34:16-35:19). When Special Agent Fox spoke with TFO Bickell, "he [did] not have any recollection of ever… having the warrant entered into NCIC." (*Id*. at 35:9-13). In *United States v. Cooley*, the Court found that the government committed a "negligent error" when the defendant's warrant was wrongfully removed from the NCIC database, but that this negligence did not prejudice the defendant because it resulted in only eight out of the 29-month delay. However, the Government here did not properly file the detainer for five years. The first time the arrest warrant was filed in NCIC was November 2024, five years after it was issued.

However, the Government argues that the improperly logged detainer was not the reason in delaying Mr. Glover's prosecution. (Tr. 49:18-50:7). Rather, it was comity in deferring to the state prosecution that caused the Government's delay, and it is "reasonable to hold off [on federal prosecution] until the state conducts its sentencing… even if it takes ten years." (*Id*. at 51:11-52:7) However, this argument also lacks persuasiveness.

On November 6, 2021, Mr. Glover pled guilty to his tampering with a witness charge. On December 6, 2021, the pending robbery and armed criminal action charges in Cass County were dismissed. At that time, Mr. Glover was being held in Cass County custody until his sentencing, which did not occur until May 31, 2022. For over two months, Mr. Glover was held in state custody awaiting sentencing, without pending state charges, until he was newly indicted for robbery, armed criminal action, and unlawful possession of a firearm on February 24, 2022. Per the Government's own argument, it could have brought Mr. Glover into federal custody without disrupting ongoing state prosecution during these two months, but it did not. When Mr. Glover was arrested to face this federal case in November 2024, he had pending state charges of delivery of 35 grams or less of marijuana or synthetic cannabinoid and delivery or possession of an item at a county/private jail or correctional center that are still unresolved, for which he has not been convicted or sentenced. Mr. Glover has outstanding state warrants for his arrest stemming from his failure to appear at hearings on his ongoing robbery case because he was arrested and placed in federal custody in this case, contradicting the Government's "comity to state prosecution" argument. (Defense Exhibit H3.1-3.2).

The Government also argues that Mr. Glover's state cases were delayed in part due to Mr. Glover's refusal to attend eleven hearings, his multitude of defense attorneys, and acquiring a tampering with a witness charge, which can weigh against him. (Tr. 55:10-56:20); *see also Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("[D]elay caused by the defense weighs against the defendant[.]"). However, federal prosecutors still could have acted despite the continuance of Mr. Glover's state proceedings. In *United States v. Lowry*, 112 F.4th 629, 630-31 (8th Cir. 2024), the federal government was not negligent and did not violate defendant's right to a speedy trial when it moved the court to transfer the defendant from state to federal custody the day after the state

case was continued for more than six months. Here, the Government did not move to arrest Mr. Glover until two years after he had a lapse in pending state charges while in Cass County custody, despite the lengthy continuances and distinguishing the Government's actions from those in *Lowry*. Accordingly, the undersigned recommends that the District Judge find that this factor weighs in Mr. Glover's favor.

**D. Mr. Glover's failure to assert his speedy trial right does not weigh against him.**

The third factor is whether the defendant has asserted his right to a speedy trial. The Government concedes that this factor is neutral, at best. (Doc. 23 at 11). The Court weighs "the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Barker*, 407 U.S. at 529. Here, Mr. Glover was unable to assert his right to a speedy trial prior to his arrest because he was unaware of the federal indictment. Mr. Glover's attorney first indicated a concern about a speedy trial issue at his arraignment and detention hearing on November 25, 2024, the first business day after he was arrested. (Doc. 19 at 6). On November 26, 2024, the following day, Mr. Glover's attorney filed this Motion to Dismiss, raising substantive legal arguments regarding the application of the *Barker* factors. (Doc. 19). Accordingly, the undersigned recommends that the District Judge find that Mr. Glover's failure to assert his right to a speedy trial until November 25, 2024, cannot be weighed against him.

**E. Mr. Glover has been presumably prejudiced by the nearly five-year delay.**

The fourth factor is whether the delay has prejudiced the defendant. Mr. Glover argues that "given the amplified presumption of innocence arising from review of the first three factors, [he] has no duty to show actual prejudice arising from a demonstrable loss of evidence or witnesses." (Doc. 19 at 7). The Government argues Mr. Glover has not identified any actual prejudice and any

presumption of prejudice is "readily rebutted." (Doc. 23 at 12–13). The Government has failed to rebut that presumption.

In considering this factor, the Court assess the interests served by the speedy trial right, which are "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired – with the last being the most serious." *Wolter*, 112 F.4th at 572 (citing *Barker*, 407 U.S. at 532). Here, Mr. Glover was not detained on the federal case until five years after indictment. During those five years of inaction on this case, Mr. Glover was unaware of the federal charge and was not subjected to worrying about how to resolve the charge. Therefore, the first two factors are not relevant in this case. With respect to the most serious factor, the possibility that the defense will be impaired, this Court finds that Mr. Glover has not alleged sufficiently that any witnesses or evidence are missing or that he cannot reconstruct or remember the events charged in the indictment. To the contrary, the Government has proffered that Trooper Gundy is available to testify at trial, the firearm recovered from Mr. Glover's car has been preserved, and much of the pursuit, stop, and investigation have been captured on video. (Tr. 16:10-25).

Mr. Glover's main argument, however, is not that he suffered the prejudice outlined above. Instead, Mr. Glover asserts that presumptive prejudice applies when a delay of this length occurs. (Doc. 34 at 14). "[T]he degree of prejudice required, if any, depends on the defendant's showing under the preceding *Barker* factors." *United States v. Sims*, 847 F.3d 630, 636 (8th Cir. 2017). Accordingly, under the fourth *Barker* factor, when the delay is excessive, "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows," and our "toleration of ... negligence varies inversely with its protractedness and its consequent

threat to the fairness of the accused's trial." *Erenas-Luna*, 560 F.3d at 779 (citing *Doggett*, 505 U.S. at 657).

In *Doggett*, government negligence caused a six-year delay:

> To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8½ years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays "extraordinary." See *Barker*, supra, 407 U.S., at 533. When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review…, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, e.g., 407 U.S., at 534–536, nor persuasively rebutted, the defendant is entitled to relief.

*Doggett* at 657-58.

Here, because the first two factors, namely length and reason for delay, weigh more in Mr. Glover's favor, and the third does not weigh against him, he does not have the burden of putting forth specific evidence of prejudice. Rather, prejudice is presumed. The government has failed to persuasively rebut that presumption. The sheer length of delay in this case, over five years, mirrors the facts in *Doggett* where the defendant lived openly in the United Staes before being arrested on a federal indictment filed eight years prior and after the United States Marshal performed a simple records check. F.3d at 650. In this case, the Government failed to file Mr. Glover's federal detainer or bring him into custody for five years, an excessively long delay, despite knowing where he was most of the time and the two-month lapse in pending state charges. (Tr. 49:18-50:7). There is no evidence that law enforcement ensured that the detainer had been properly filed, despite periodic reviews of his status in Cass County. (Tr. 45:19-46:22). In fact, Special Agent Fox was unaware

that the federal detainer had not been filed until November 2024, five years after it was issued. (Tr. 23:8-24). The Government's "comity to state prosecution" argument fails as well for reasons stated above.

### III. Conclusion

The undersigned recommends that the District Judge find Mr. Glover's Sixth Amendment right to a speedy trial was violated under a balancing of the *Barker* factors. Accordingly, IT IS THEREFORE RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, GRANT Defendant Oscar Curtis Glover III's Motion to Dismiss. (Doc. 19).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dated this 23rd day of December, 2024, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
Chief United States Magistrate Judge